# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **CARLOS L. MARTINEZ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 1274 |
| | ) | |
| **SAKURAI GRAPHIC SYSTEMS** | ) | Magistrate Judge |
| **CORPORATION,** f/k/a **SAKURAI** | ) | Martin C. Ashman |
| **MACHINERY WORKS, LTD.,** and f/k/a | ) | |
| **SAKURAI MACHINE TRADING CO.,** | ) | |
| **LTD.;** and **DORN SPE, INC.,** a Foreign | ) | |
| Corporation doing business in Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Several motions are presently before this Court. Defendant Sakurai Graphic Systems

Corporation ("Sakurai") has moved to bar the expert of plaintiff Carlos L. Martinez ("Plaintiff")

from testifying, and has also moved for summary judgment. Defendant Dorn SPE, Inc. ("Dorn")

has also moved for summary judgment. The parties have consented to have this Court conduct

any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C.

§ 636(c); Local R. 73.1. For the reasons that follow, the Court grants Sakurai's motion to bar in

part and denies it in part, and the Court grants Sakurai's and Dorn's motions for summary

judgment.

# I. Background

The facts in this case involve an injury that Plaintiff sustained while working at a silk screen cylinder printing press. (Sakurai's Mem., Summary Judgment, at 2.) On March 9, 2001, Plaintiff was in the process of setting up a "Cylinder Press No. 8, Sakurai Model 102 A, Serial No. RT 015387" while working for his employer, Chicago Decal Company. (Pl.'s Resp., Mot. to Bar, at 1-2.) The Court refers to the machine that caused Plaintiff's injury as the "Subject Machine." The Subject Machine was manufactured by Sakurai in 1987 and was sold to Chicago Decal by Dorn. (Pl.'s Resp., Mot. to Bar, at 2.) On March 9, 2001, Plaintiff was injured when "the frame that supported the metal screen on the subject machine smashed into his left hand, breaking the hand and wrist. This terrible crushing injury required two surgeries and a skin graft to repair." (*Id.* (citations omitted).) Plaintiff states that, in the occurrence of this accident, he did not press the start button, either with his hands or with any other part of his body.

Following the accident, Plaintiff initiated this suit against Sakurai and Dorn. Plaintiff's claims are based on theories of negligent design and manufacture. (Sakurai's Mem., Summary Judgment, at 1-2.) Essentially, Plaintiff argues that the Subject Machine was negligently designed and manufactured because it failed to have certain safety features and warning devices. (Pl.'s Resp., Mot. to Bar, at 4.)

In order to support his case, Plaintiff has retained expert Douglas Morita ("Morita") to testify regarding two issues. First, Morita is prepared to testify that the machine lacked features that, if present, would have prevented Plaintiff's injury. Specifically, Morita believes that the machine "failed to have an audible warning system with annunciator lights or a safe means to start continuous operation in the RUN or AUTO modes." (*Id.*) Morita also suggests that the

"requirements of either a simultaneous depression of two buttons or of a prior action by the operator in addition to selecting the mode of operation, . . . would have [made it] impossible for Martinez to start the machine without him first removing his left hand from the side guide." (*Id.*) An interlocking mechanism on the Subject Machine would have prevented the accident, Plaintiff suggests. Morita is also prepared to state that, because analogous standards promulgated by the American National Standards Institute ("ANSI") require the audible warning system, the two-button depression safety precaution, and the interlocking mechanism, the Subject Machine is unreasonably dangerous and is therefore defectively designed. (*See* Pl.'s Resp., Mot. to Bar, at 8.)

Second, Morita is prepared to state his theory that "it was possible for the start button on the subject machine to be depressed by either one of Martinez's tools or something in his pockets." (Pl.'s Resp., Mot. to Bar, at 3.) Based on this possibility, Morita is prepared to testify that the machine is unreasonably dangerous due to its design, which is negligently defective. (Pl.'s Resp., Mot. to Bar, at 3-4.)

In its motion to bar, Sakurai argues that Morita is not qualified to testify as an expert. In its motion for summary judgment, Sakurai argues that without Morita's testimony, no evidence supports Sakurai's deviation from any standard and no evidence supports proximate causation, the absence of either of which entitles Sakurai to judgment as a matter of law. Dorn adopts Sakurai's arguments in its motion for summary judgment, and further argues that it is not liable because Plaintiff has not shown that Dorn had a duty to warn Plaintiff of the Subject Machine's design.

- 3 -

## II.   Discussion

### A.   Expert Testimony

The Court first addresses Sakurai's motion to bar. The admission of expert testimony is governed by Federal Rule of Evidence 702, which states,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to demonstrate a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court case *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), also governs. *Daubert* directs the Court, prior to admitting scientific evidence, to determine whether the propounded testimony is both reliable and relevant. These aspects require the evidence to be "derived by the scientific method," to be "supported by appropriate validation," and to have a "valid scientific connection" to its relevance in the case at hand. *Id.* at 590, 592. The Seventh Circuit has recently reiterated the framework for expert qualification under Rule 702 and *Daubert*: the Court considers "whether (1) the proposed witness would testify to valid scientific, technical, or other specialized knowledge and (2) his testimony will assist the trier of fact." *Trustees of Chi. Painters & Decorators Pension v. Royal Int'l Drywall and Decorating, Inc.*, No. 06-2367, Slip Op. at 6 (quoting *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 816 (7th Cir. 2004)).

### 1. Morita's Qualifications

The Court first considers Rule 702's requirement that Morita be qualified to testify as an expert. In determining whether an expert will testify to valid technical or scientific knowledge, the Court "evaluates the reliability of the testimony, . . . [and] reject[s] any subjective belief or speculation." *Ammons*, 368 F.3d at 816 (internal quotations omitted). The testimony must be both reliable and relevant, and in this determination the court considers factors "including testing, peer review, error rates, and acceptability within the relevant professional community." *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000). The Court "consider[s] a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). At the same time, an expert's qualifications must be within the same technical area as the subject matter of the expert's testimony; in other words, a person with expertise may only testify as to matters within that person's expertise. Generalized knowledge of a particular subject will not necessarily enable an expert to testify as to a specific subset of the general field of the expert's knowledge. *See O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1390 (C.D. Ill. 1992).

Here, Sakurai argues that Morita is not qualified to testify as to the specific machine that caused Plaintiff's injury. The Subject Machine is a "silk screen cylinder printing press." (Sakurai's Mem., Summary Judgment, at 2.) Morita's *curriculum vitae* indicates that he earned an engineering degree from Northwestern University and has approximately 38 years of engineering experience. He has attended seminars specifically relating to printing press safety, although these seminars took place more than twenty years ago. (Pl.'s Resp., Mot. to Bar, Ex. B.)

Morita states that his expertise includes the hazards surrounding the Subject Machine, as well as how hazards are addressed by "all other types of equipment manufacturers." (Morita Dep. at 13.) This includes an understanding of the different types of remediation procedures employed to minimize hazards.

The crux of Sakurai's argument is that Morita's experience is in the field of engineering generally, and that while Morita may be able to testify as to some aspects of the printing industry, he is not qualified to testify as to "cylinder silk screen presses specifically." (Sakurai's Mot. to Bar at 4.) The Court believes that Morita is qualified to testify as to machine safety—including safety issues involving cylinder silk screen presses. Sakurai makes much of Morita's statement that his experience relates to how hazards are remediated by "all other types of equipment manufacturers," which Sakurai states is akin to an admission that Morita's qualifications are broad and do not relate to the Subject Machine. (*Id.* (stating that Morita "admits that his extensive experience is really how 'hazards are addressed generally by all other types of equipment manufacturers.'" (citing Morita Dep. at 13)).) In context, however, Morita's statement at his deposition was surrounded by questions from Sakurai's counsel. Sakurai's counsel specifically questioned Morita's experience as it relates to silk screen printing cylinder presses, such as the Subject Machine. Morita responded, "I have seen other silk screen printing devices. I do not believe that they were of this particular design. This particular machine has design features which are common to other types of machines and, you know, I have encountered a lot of those." (Morita Dep. at 14.) This testimony demonstrates to the Court that Morita's experience covers the field of machine hazards, and specifically includes press industry hazards such as those that might be present with silk screen printing presses. Although Morita's

experience may not qualify him to testify as to some aspects of the Subject Machine, Morita may testify as to personal safety relating to the Subject Machine.

## 2. Testimony as to Standards in the Industry

Inasmuch as Morita is qualified in the area of machine safety, he is qualified to testify as to the standards a machine must meet in order to be considered safe. In addition, following the framework of Rule 702 and *Chicago Painters & Decorators*, the Court believes that Morita's testimony in this regard would be helpful to a jury. In order demonstrate that the machine at issue was negligently designed, Morita is prepared to testify that the applicable industry standard is ANSI B65.1-1985 Revision of ANSI B65.1-1972 ("ANSI B65.1"). Sakurai states that these ANSI standards do not apply to the machine at issue. Presumably, Sakurai suggests that this indicates that Morita's testimony should be barred under *Daubert* and its progeny. The Court does not agree.

As stated above, Morita is qualified to testify on issues of machine safety, including safety issues with respect to the machine at issue in the present case. The parties agree that no ANSI standard explicitly applies to cylinder silk screen presses. Morita relies on ANSI standards that purport to apply to "safety specifications for the design of the press drive controls and safety signaling systems for web and sheet-fed printing presses." Am Nat'l Std. Inst., Safety Specifications for printing Press Drive Controls, ANSI B65.1-1985 Revision of ANSI B65.1-1972, ¶ 1.1 (1985).

Sakurai argues that the application of ANSI B65.1 to the Subject Machine is inappropriate because this standard is not analogous to the machine at issue. Initially, the Court

notes that ANSI B65.1 does not state that it applies to silk cylinder screen presses; however, this standard does not affirmatively state that it is inapplicable to silk cylinder screen presses. In other words, on its face, ANSI B65.1 is neither applicable nor inapplicable to the machine at issue.

Sakruai states that Morita "simply decided that [this ANSI standard] was applicable because there were no separate screen press standards." (Sakurai's Mot. to Bar, at 11.) The Court does not believe that Morita's reliance on ANSI B65.1 is as arbitrary as Sakurai paints it. Morita explained his rationale in relying on this ANSI standard in his deposition, in response to questioning by Sakurai's counsel:

> Q. And first of all, what's the basis of your opinion that this standard is applicable to screen presses such as the one that's involved in this case?

> A. Okay. Basically I was not able to find any ANSI standards which, by virtue of its title, was specifically intended to apply only to silk screen-type printing machines of any type . . . . Therefore, in the absence of such standards, generally what one does in looking at machine safety is to look at standards of good safety practice which are standards either for equipment which is similar in intent to the specific machine or which has features or hazards which would be consistent with the machine in question.

(Morita Dep. at 53.) Later, Morita explained the differences and similarities between the machine in question and the machines to which ANSI B65.1 applies, all of which justify his reliance on ANSI B65.1. Morita compared the differences and said, "Based on, you know, my understanding of the standard and the various types of printing presses available, this particular standard would apply to both extremes [i.e., the endpoints of his spectrum of comparable presses to which the ANSI standards apply]." (Morita Dep. at 56.) This dialogue demonstrates to the

- 8 -

Court that Morita's testimony is based on proper industry methods: no ANSI standard applies, so Morita explained how a comparable ANSI standard is chosen.

More fundamentally, the Court understands Sakurai's argument to be that the ANSI standard on which Morita relies is not analogous. The Court believes that this line of reasoning speaks to the weight of Morita's testimony, not its admissibility. Sakurai is free to argue that the ANSI standard is non-analogous at trial. For the purposes of determining whether Morita's testimony is admissible under *Daubert*, the Court finds that Morita is qualified as an expert in the field of machine safety, and his conclusion that ANSI B65.1 is applicable is supported by proper methodology. Moreover, because Morita's experience and skill is in the area of machine safety, the Court finds that this evidence would be helpful to a jury, as it would inform a jury as to the standards applicable to the Subject Machine. *See O'Conner*, 807 F. Supp. at 1390 ("An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion." (quoting *United States v. Benson*, 941, F.2d 598, 604 (7th Cir. 1991))). Thus, Morita's testimony as to the applicable standards is admissible.

### 3.    Testimony Not Based on Facts

Sakurai also argues that Morita's testimony should be barred because it is not based on facts and his theory is not tested. Rule 702 requires a testifying expert witness to have "applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702(3). Without factual support in the record, the expert's opinion is mere speculation and will not be helpful to a jury.

In this case, Morita is prepared to testify that Plaintiff's accident was "possibly" caused by something in Plaintiff's pocket that pressed a button on the Subject Machine, causing the accident. This testimony is not supported by facts in the record. Plaintiff has stated that he does not know what caused the machine to start, causing his injury. He states only that he "did not touch those buttons with [his] knees or any other parts of [his] body." (Martinez Dep. at 59.) This testimony gives no indication that something in Plaintiff's pocket might have come into contact with any button on the machine. Plaintiff does not even suggest that he had anything in his pockets at the time. Despite this lack of evidentiary support, Morita states that the

> possibility exists that [Plaintiff] had something in his pocket and in the process of reaching around he, you know, leaned into the machine and just by quirk of fate, whatever he had in his pocket was of sufficient depth and his position was such that he caused the momentary depression of that switch and that's all it took for the machine to start in the "run" mode.

(Morita Dep. at 46.) No facts in the record support Morita's theory that something in Plaintiff's pocket depressed the button. No facts indicate the possibility that Plaintiff had something in his pocket, and no facts indicate that anything in Plaintiff's pocket might have come into contact with the button. Because this testimony lacks evidentiary support, Morita's opinion is speculative and it must be barred.

Sakurai raises a related argument, arguing that Morita's theory that the possibility exists that something in Plaintiff's pocket depressed the button on the machine does not comport with proper methodology as required by Rule 702. The Supreme Court has stated that expert testimony must be reliable, and that reliability must be based on methods and procedures of the particular field in question, which would guard against "unsupported speculation." *Daubert*, 509 U.S. at 590. "[Expert testimony] is admissible only to the extent it is reasoned, uses the methods

of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

Morita's theory that something in Plaintiff's pocket "possibly" depressed the button on the machine is utterly untested. Morita's line of reasoning is as follows: Morita first concluded that the machine would only be activated if the button was depressed. Morita then ruled out other explanations as to what could have turned on the machine while Plaintiff's hand was in the way of danger. As Plaintiff states, "In support of [Morita's something-in-the-pocket theory], Mr. Morita found that there was no evidence to suggest that the machine began operating as a result of an electrical problem. Further, there was no one else near enough to the Subject Machine at the time of the accident to have turned it on." (Pl.'s Resp., Mot. to Bar, at 3 (citing Morita Dep. at 42, 53).) This does not constitute testing, but instead speculates that because a handful of intuitive causes are ruled out, an existing possible cause must have caused the machine to engage. Indeed, by Morita's logic, the something-in-the-pocket theory must also be ruled out as a possible cause for the Subject Machine's starting; because no evidence exists to support this cause, Morita should have set this cause aside for the same reasons that he set aside the other possible causes.

This lack of testing indicates that Morita's testimony is unreliable, speculative, and unhelpful to the trier of fact. As courts in this district have held,

> the most important [*Daubert*] factor is whether the technique (or theory) being advanced by the expert can be or has been tested . . . [The expert] offered no testable design to support his concept. And the history of engineering and science is filled with finely conceived ideas that are unworkable in practice. There is a

high potential rate of error for mechanical concepts offered [in] engineering analysis.

*Stanczyk v. Black & Decker, Inc.*, 836 F. Supp. 565, 567 (N.D. Ill. 1993).

This language from *Stanczyk* is applicable in this case. Morita did not attempt to reconstruct the accident scene. He did not measure the amount of force necessary to depress the button. Although Morita states that there exists a possibility that something in Plaintiff's pocket depressed the start button, he did not determine whether this was even possible; for example, he did not investigate whether someone standing in Plaintiff's position with Plaintiff's height and stature would be able to depress the start button with something in his pocket. Because Morita's testimony is untested, it remains speculative, and the Court finds that it is inadmissible under *Daubert*. For much the same reasoning, because Morita's theory as to how Plaintiff's injury occurred is not based on facts and remains speculative and unreliable, the Court believes that this testimony would not be helpful to the trier of fact.

In sum, the Court finds that Morita is qualified to testify as to machine safety, and that his testimony that ANSI B65.1 applies to the Subject Machine is admissible. Also, the Court finds that Morita's testimony as to his something-in-the-pocket theory of how the machine started is inadmissible.

## B.     Summary Judgment

In addition to arguing that the Court should bar Morita from testifying, Sakurai argues that it is entitled to summary judgment. Dorn also moves for summary judgment. Under Federal Rule of Civil Procedure 56(c), the Court may grant a motion for summary judgment where "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court "considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion." *Aguirre v. Turner Constr. Co.*, 05 C 515, 2006 WL 644009, at *2 (N.D. Ill. Mar. 9, 2006) (citing *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000)). Where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine issue of material fact exists that will preclude a summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 1. Sakurai

#### a. Industry Standards

Plaintiff's theory as to why Sakurai is liable for his injury is based on negligent manufacture and design of the Subject Machine. In order to succeed in his claim, Plaintiff must demonstrate that Sakurai breached its duty to abide by the standard of care in the industry. *See Carrizales v. Rheem Mfg. Co.*, 226 Ill. App. 3d 20, 36, 589 N.E.2d 569 (App. Ct. 1992). Implicit in this requirement is that Plaintiff must present evidence of what that duty of care is, in order to demonstrate that Sakurai's conduct was not consistent with that duty. *Baltus v. Weaver Div. of Kidde & Co.*, 199 Ill. App. 3d 821, 830, 557 N.E.2d 580 (App. Ct. 1990). The relevant standard of care is that which was applicable at the time of manufacture, here 1987. *See id.*

Plaintiff has several options by which he can attempt to demonstrate what the applicable industry standard is. The law allows Plaintiff to present evidence as to the practices of other manufacturers of the Subject Machine in 1987. Alternatively, Plaintiff can point to governmental regulations or industry group regulations that articulate a standard of care from which Sakurai deviated. *See Anderson v. Hyster Co.*, 74 Ill. 2d 364, 368, 385 N.E.2d 690 (1979).

Here, in order to present evidence as to the standard of care in the industry, Plaintiff relies on the testimony that Morita is prepared to give. Plaintiff does not give evidence as to the procedures actually practiced in 1987 by other manufacturers of machines like the Subject Machine; Morita's opinion does not speak to this issue. Rather, Plaintiff relies on testimony by Morita that Sakurai did not adhere to standards articulated in ANSI R65.1. According to Plaintiff, these standards suggest that Sakurai had a duty to design the machine such that it can only become engaged when two buttons are depressed, includes a warning light and audible warning system to alert the user that the machine is engaged, or includes an interlocking mechanism to prevent the user's limbs from becoming crushed by moving machine parts. (*See* Pl.'s Resp., Mot. to Bar, at 8.)

Sakurai argues that Plaintiff has provided no evidence as to the standard of care in the industry in 1987. Sakurai argues that Plaintiff has given no evidence to suggest that other manufacturers of silk screen cylinder presses were including any of these ANSI-suggested safety precautions in 1987. (Sakurai's Mem., Summary Judgment, at 6.) The Court agrees that Plaintiff has not given any evidence that other silk screen presses included these safety precautions in 1987; however, Plaintiff has given evidence as to the standard of care. Specifically, Plaintiff relies on the testimony of Morita in order to show that ANSI R.65.1 applies. As stated above,

- 14 -

Morita stated that, although no ANSI standard facially applies to the Subject Machine, ANSI R65.1 is analogous. The Court believes that this evidence—that this ANSI standard is analogous—is admissible. For this reason, the Court believes that Plaintiff has proffered evidence as to the standard of care that Plaintiff alleges Sakurai failed to meet.

Sakurai argues—in the same vein as Sakurai's motion to bar Morita—that Morita improperly concluded that the ANSI standard is analogous. As discussed above, Morita gives reasoning as to why the ANSI standards are analogous—he stated what is ordinarily done in this industry when no ANSI standards facially apply, and he explained why he concluded that these particular ANSI standards are analogous. This reasoning complies with industry methods, and a reasonable fact finder could find that the standards are analogous. As stated above, Sakurai's argument asks the Court to find that Morita's conclusion that the ANSI standard is analogous is improper, but that Sakurai's conclusion that the ANSI standard is not analogous is proper. The Court declines to determine this sub-issue. At this stage in the case, the Court simply considers whether Plaintiff has offered some evidence as to the standard of care, such that a reasonable jury could return a verdict in Plaintiff's favor.

Thus, the Court concludes that Plaintiff has presented evidence as to the standard of care in the industry in 1987. Viewing the evidence in a light most favorable to Plaintiff, a factual question exists as to whether Sakurai has breached its duty to adhere to the applicable standards. For this reason, this argument does not support Sakurai's motion for summary judgment.

### b. Proximate Cause

In addition to proving that Sakurai's conduct did not meet industry standards, Plaintiff must also show that this failure to meet industry standards proximately caused Plaintiff's injuries. *Korando v. Uniroyal Goodrich Tire Co.*, 159 Ill. 2d 335, 344, 637 N.E.2d 1021 (1994). Because this is an essential element of Plaintiff's *prima facie* case for negligent design and manufacture, the Court will not assume that this element is met. *Id.* The question of proximate cause is a factual question for the jury to decide; nevertheless, in order to survive summary judgment, Plaintiff must put forth facts to demonstrate that an evidentiary basis exists for finding that the defective design and manufacture proximately caused Plaintiff's injury. *See Baltus*, 199 Ill. App. 3d at 832, 557 N.E.2d 580.

Thus, in order to prevail in his claim, Plaintiff must present facts to show that the failure of the Subject Machine to abide by industry standards (i.e., only one button to engage the machine, no audible or light warning system, no interlocking mechanism) caused his injury. The Court believes that Plaintiff has not shown facts that demonstrate what happened that caused Plaintiff's injury.

As stated above, Plaintiff states that he does not know how the Subject Machine started; he "know[s] for sure [he] did not touch those buttons with [his] knees or any other parts of [his] body." (Martinez Dep. at 59.) Also, Morita has stated that the machine can be started only if the appropriate button is depressed. The only facts that Plaintiff presents in order to demonstrate what happened is Morita's testimony. This testimony is Morita's something-in-the-pocket theory, namely, that "it is possible" that something in Plaintiff's pocket depressed the start button. As discussed above, the Court finds that Morita's testimony is not supported by record testimony and

is untested, and that it is therefore inadmissible. Without Morita's testimony, Plaintiff has shown no facts that would present an evidentiary basis for showing that his injury was caused by Sakurai's failure to meet industry standards.

Because Plaintiff has failed to present evidence that would support the proximate cause element in his claim, the Court believes that the facts presented, when viewed in a light most favorable to Plaintiff, cannot support Plaintiff's claim. Thus, Sakurai is entitled to judgment as a matter of law, and the Court grants Sakurai's motion for summary judgment.

### 2. Dorn

Like Sakurai, Dorn has filed a motion for summary judgment, arguing that the facts that Plaintiff alleges cannot show that Dorn is liable to Plaintiff for Plaintiff's injury. Specifically, Dorn states that Plaintiff's complaint claims that Dorn "was involved in the design, distribution, manufacture, and sale" of the Subject Machine. (Dorn's Mot., Summary Judgment, at 1.) Dorn argues that it was never involved in the design or manufacture of the machine, and that it never undertook a duty to warn Plaintiff of any design defects that might have caused Plaintiff injury. (*Id.*) The Court agrees that Dorn is entitled to summary judgment.

Initially, the Court believes that the issue at play in this instance is whether Dorn can be held liable for a failure to warn Plaintiff of the negligently defective design and manufacture of the Subject Machine. Although Plaintiff's complaint apparently suggests that Dorn is liable on the basis of Dorn's involvement in designing and manufacturing the machine, Plaintiff has given no facts that demonstrate that Dorn was involved in these aspects of the production of the machine. Also, Dorn states that it was never involved in the design and manufacture. Moreover,

- 17 -

Dorn's motion and Plaintiff's response focus their analyses on the issue of whether Dorn had a duty to warn. For these reasons, the Court believes that the pertinent issue is whether Dorn had a duty to warn Plaintiff, and not whether Dorn was "directly" involved in the allegedly negligent design and manufacture.

The issue becomes whether any basis exists for finding that Dorn had a duty to warn Plaintiff of the Subject Machine's hazard. "[I]n a negligence action, the duty to warn co-exists with the corresponding liability for the hazard if no warning is given. If the defendant is not liable for the existence of the hazard in the first instance, he is under no duty to warn of it." *Sculles v. American Envtl. Prods., Inc.*, 227 Ill. App. 3d 741, 744, 592 N.E.2d 271 (App. Ct. 1992) (citations omitted). As discussed above, because Plaintiff has not demonstrated that any negligently defective design of the Subject Machine proximately caused Plaintiff's injury, Plaintiff has not demonstrated that Dorn is liable for Plaintiff's injury. In other words, for all the reasons that Sakurai is entitled to summary judgment, Dorn is also entitled to summary judgment. Even though Dorn cannot be liable to Plaintiff, the Court considers whether Dorn was under a duty to warn in any event.

In *Sculles*, the court found that the defendant did not have a duty to warn the plaintiff of the hazardous nature of a machine that caused the plaintiff's injury. The court pointed out that the defendant was under no contractual obligation to provide the plaintiff's employer with safety suggestions. Neither did the plaintiff's employer ever request safety information. Moreover, although the defendant had conducted several repairs on the machine, the court concluded that the defendant did not thereby undertake a duty to warn because the repairs were unrelated to the incident that caused the plaintiff's injury. In addition, although the court later noted that where a

person undertakes a task, that person assumes a duty to conduct that task with reasonable care, the defendant did not undertake a duty to warn when he "eyeballed [the machine] for safety defects." *Id.* at 745 (internal quotations omitted). *See also Clark v. Hajack Equip. Co.*, 220 Ill. App. 3d 919, 924, 581 N.E.2d 351 (App. Ct. 1991) (finding that the defendant did not undertake a duty to warn where the defendant "had no periodic, deliberate presence at the work site and had not undertaken any responsibility for job safety," reasoning that "the one-time repair job cannot, in our opinion, become the basis of a negligent undertaking theory of liability where there is no evidence that [the defendant] voluntarily undertook Midwest's responsibility for the ongoing and future safety of the dock leveler").

The parties agree that no pertinent written contract governs the relationship between Plaintiff and Dorn. Thus, any duty to warn is neither created nor limited by any contractual obligation of Dorn. Because no contract is at play, the issue of whether Dorn had a duty to warn turns on whether Dorn's position as the party who sold and maintained the machine gives rise to a duty to warn.

On this issue, the Court finds *Sculles* and *Clark* instructive. Both of these cases held that the defendant's conduct in repairing the machine that caused the plaintiff's injury did not give rise to a duty to warn. Plaintiff does not claim that Plaintiff or Chicago Decal ever requested that Dorn perform any type of complete safety inspection. Also, like *Clark*, Plaintiff has given no evidence that Dorn "voluntarily undertook . . . responsibility for ongoing and future safety" as to the Subject Machine. With this in mind, the Court does not believe that Dorn should be given the duty of ensuring that Chicago Decal employees are warned.

Plaintiff also argues that the Court should find that Dorn is under a duty to warn because of its superior knowledge of the Subject Machine. According to Plaintiff, "a duty to warn exists where there is unequal knowledge and the defendant, possessed with such knowledge, knows or should know that harm might occur if no warning is given." (Pl.'s Resp., Dorn Summary Judgment, at 13 (citing *Gray v. Nat'l Restoration Sys.*, 354 Ill. App. 3d 345, 359, 820 N.E.2d 943 (App. Ct. 2004).) Plaintiff attempts to distinguish *Sculles* by pointing out that the defendant in *Sculles* only "eyeballed" the machine when doing repairs, while Dorn had "extensive and intimate knowledge of the subject machine." (*Id.*) Plaintiff then points to evidence that Dorn is the exclusive distributor of the Subject Machine in North and South America, and that "Dorn had a specific section of its company dedicated to this particular machine, with employees having decades of experience selling, inspecting, repairing and training others on it." (*Id.*) From this, Plaintiff concludes that "Dorn would know not only every aspect of the subject machine, but all the possible issues and accidents that could occur." (*Id.*) Plaintiff juxtaposes against this Plaintiff's limited actual knowledge of the Subject Machine; Plaintiff states that he has undergone only one week's worth of training, and that he currently "is unaware of even the correct names for the positions of the knob on the control panel." (Pl.'s Resp., Dorn Summary Judgment, at 17.) This, Plaintiff asserts, demonstrates that Dorn has unequal knowledge of the Subject Machine, giving Dorn a duty to warn.

The issue of whether a defendant is under a duty to warn of the dangers associated with a design defect is a question of law for the Court to decide. *Gray*, 354 Ill. App. 3d at 359, 820 N.E.2d 943. Thus, this issue is properly addressed in summary judgment. The Court recognizes that Dorn's involvement in selling and installing the machine was significant. The parties dispute

whether Dorn is the exclusive seller of Sakurai machines in the western hemisphere. Although Dorn states that Sakurai would sell its parts to any person who desired to purchase them, (Oral Argument, July 11, 2007), Plaintiff points to testimony from a Dorn employee who suggests that Dorn is the exclusive distributer of the Subject Machine in North and South America. (Pl.'s Resp., Dorn Summary Judgment, at 6 (citing Force Dep. at 16).)

Although Dorn's involvement was significant, Plaintiff has not pointed to facts that the Court believes support a duty to warn. The facts Plaintiff submitted pursuant to Local Rule 56.1 state only that Dorn's "service includes installing the machine, providing repair parts, and training customers on the operation of the machine at installation and later upon request." (*Id.*) Although this statement makes Dorn's service appear extensive, the only actual service that Plaintiff identifies is the installation of the machine in October 1987, initial training at this installation, and "subsequent training of Chicago Decal employees upon request." (*Id.*) Plaintiff's brief states—without citation—that Dorn performed "approximately yearly inspections of the presses at Chicago Decal." (Pl.'s Resp., Dorn Summary Judgment, at 15.) First, the Court points out that it cannot rely on statements in a party's brief that have no accompanying reference to the record. Thus, the Court decides this point without taking into consideration this unsupported assertion in Plaintiff's brief.

Moreover, even if this statement were supported by the record, the Court notes that the fact that Dorn inspected the presses at Chicago Decal does not necessarily lead to the conclusion that Dorn knew or should have known of the Subject Machine's defective design. On the facts Plaintiff has given, the Court cannot be sure that the periodic inspections related in any way to the subject machine, instead of other machines that Dorn sold to Chicago Decal.

- 21 -

The facts taken as a whole suggest that Dorn merely installed the machine and performed training and service as per Chicago Decal's specific requests. This is consistent with Dorn's arguments, and is apparent in Plaintiff's arguments. Moreover, Dorn states that "[t]he service records showed maintenance and repairs, no overhaul or alteration or modification on the original design [of the Subject Machine]." (Dorn's Mem., Summary Judgment, at 4.) Thus, although Dorn apparently did undertake some repair and maintenance, the Court does not believe that this suggests that Dorn undertook a duty to warn Plaintiff. *See Clark*, 220 Ill. App. 3d at 924, 581 N.E.2d 351 ("Even assuming that the modification created a dangerous condition, there are no facts in the record to create an inference that Hajack negligently undertook a gratuitous duty to discover and report such condition to the party that created the condition. Nor is there any evidence that Midwest depended on such an inspection.").

The Court also believes that Dorn's position as seller of the Subject Machine does not necessarily indicate that Dorn was aware of the defective design. Plaintiff's evidence is simply that Dorn has a general knowledge of the Subject Machine. The fact that Dorn is the exclusive distributor of the Subject Machine, or that Dorn has a specific section of its company devoted to the subject machine, does not necessarily mean that Dorn knows or should know of the presence of this defect. Plaintiff has given no evidence that other similar injuries have occurred on the Subject Machine or any similar machine, which could demonstrate that Dorn should have known that Plaintiff's injury was likely or possible. Relatedly, Plaintiff suggests that the key factor in determining whether a duty to warn exists is the foreseeability of the accident. (Pl.'s Resp., Dorn Summary Judgment, at 17 (citing *Moore v. Powermatic*, 738 F. Supp. 1188, 1190 (N.D. Ill. 1990)).) Plaintiff has given no evidence—such as the existence of similar accidents on similar

machines—to suggest that Dorn could have foreseen the accident that caused Plaintiff's injury. The Court cannot conclude from the evidence presented that Dorn is or should be aware of the defect that Plaintiff claims the Subject Machine has.

For these reasons, the Court does not believe that Dorn's involvement with the Subject Machines indicates that Dorn undertook a duty to warn Plaintiff of design defects of the machine. Thus, the Court holds that Dorn is entitled to judgment as a matter of law, and the Court grants Dorn's motion for summary judgment.[1]

---

[1] Plaintiff also makes a very brief argument that Dorn is liable under the doctrine of "apparent manufacturer." The Court does not believe this doctrine is applicable. First, as the Illinois Supreme Court has noted, the apparent manufacturer doctrine requires Plaintiff to demonstrate that Dorn has held itself out as the manufacturer of the Subject Machine, such as by advertising or labeling the machine as manufactured by Dorn. *See Hebel v. Sherman Equip.*, 92 Ill. 2d 368, 372, 442 N.E.2d 199 (1982). Plaintiff has not alleged or given facts that suggest that Dorn ever held itself out as being the Subject Machine's manufacturer, other than to state essentially that Dorn is the exclusive dealer of Sakurai products. Indeed, the Court has not found a single case where the defendant has held itself out as the manufacturer, which highlights *Hebel*'s question as to whether this doctrine remains viable in Illinois. *See id.* Furthermore, even if the apparent manufacturer doctrine does apply, it is not clear that this argument helps Plaintiff. This doctrine, if it applied, would merely estop Dorn from escaping liability by claiming it did not manufacture the machine. *See Root v. JH Indus., Inc.*, 277 Ill. App. 3d 502, 506-07, 660 N.E.2d 195 (App. Ct. 1995). Notably, Dorn is not trying to escape liability in this manner.

### III. **Conclusion**

For the foregoing reasons, the Court grant's Sakurai's motion to bar Morita from

testifying. The Court also grants both Sakurai's and Dorn's motions for summary judgment.

**ENTER ORDER:**

_Martin C. Ashman_
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: August 30, 2007.

Copies have been mailed to:

CHARLES A. WALLACE, Esq.
Morici, Figlioli & Associates
150 North Michigan Avenue
Suite 1100
Chicago, IL 60601

Attorney for Plaintiff

CHRISTOPHER CRAWFORD, Esq.
Henessy & Roach, P.C.
140 South Dearborn Street
7th Floor
Chicago, IL 60602

Attorney for Third-Party Defendant

MICHAEL PARKER, Esq.
Law Offices of Thaddeus J. Gustafson
Two North LaSalle Street
Suite 2510
Chicago, IL 60602

DONALD SEGAL, Esq.
Segal, McCambridge, Singer & Mahoney,
Ltd.
330 North Wabash Avenue
One IBM Plaza, Suite 200
Chicago, IL 60601

Attorneys for Defendants